UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRUCE TERRELL DAVIS, JR.,

                Petitioner,

    v.                                                                                Case No. 21-CV-853

CHRIS BUESGEN,

                Respondent.

## DECISION AND ORDER

**1. Facts and Procedural History**

On August 21, 2015, a masked man broke into B.B.'s Wauwatosa home and robbed him at gunpoint. *State v. Davis*, 2021 WI App 1, ¶ 3, 395 Wis. 2d 294, 953 N.W.2d 114 (per curiam). B.B. reported that the man stole his iPhones, among other things. *Id.* Shortly after the robbery, B.B. noticed that photographs he had not taken had been uploaded to his iCloud account. *Id.* B.B. showed these photographs to the police. *Id.* Looking at the photographs, the police saw an address on a piece of mail. *Id.*, ¶ 4.

The address led the police to a house where Isiah Lee lived with his brother, Bruce Terrell Davis. *State v. Davis*, 2021 WI App 1, ¶ 4, 395 Wis. 2d 294, 953 N.W.2d 114. Lee told the police "that he had packed all of Davis's property that had been in Davis's

room in a bag and took it to Lee's aunt's home." *Id.*, ¶ 4. Police then went to Lee's aunt's house, recovered the bag, and found some of B.B.'s stolen property in the bag. *Id.*, ¶ 4.

Later, Delavago Moore contacted the police to tell them that his cellmate at the Milwaukee Secure Detention Facility, Davis, had told him about a robbery he had committed in Wauwatosa some time ago, claiming to have hidden some of the stolen property at his grandmother's house. *State v. Davis*, 2021 WI App 1, ¶ 5, 395 Wis. 2d 294, 953 N.W.2d 114. Acting on Moore's tip, the police went to Davis's grandmother's house, where they found more of B.B.'s stolen property. *Id.* The State then charged Davis with one count of armed robbery with threat of force and burglary of a building or dwelling. *Id.*, ¶ 6.

At trial, the State called several witnesses, including Moore. Moore had recently pled guilty to one count of robbery, use of force, and one count of theft and was awaiting sentencing. *State v. Davis*, 2021 WI App 1, ¶ 7, n.3, 395 Wis. 2d 294, 953 N.W.2d 114. Moore faced a maximum period of imprisonment of fifteen years on the first count and three and a half years on the second. *Id.*

Knowing that Moore was facing "significant penalties," Davis's trial counsel wanted to cross-examine him about his motivations for testifying. He argued that "someone who is facing that type of time with [Moore's] prior record has much more incentive to fashion his testimony in a way that would please the State than someone who is facing a minor misdemeanor charge." *State v. Davis*, 2021 WI App 1, ¶ 7, 395 Wis.

2d 294, 953 N.W.2d 114. Being able to cross-examine Moore about his eight prior convictions, his need for drug treatment, and his desire to obtain that treatment as part of the consideration he would receive for testifying "would show [Moore's] bias and motive to testify falsely." *Id.* The State objected. *Id.*, ¶ 8.

The trial court ruled that Davis's trial counsel could ask Moore "about the number of times he was convicted of crimes, about the fact that he was awaiting sentencing for two felony charges where he was facing significant prison time, and that Moore sought drug treatment as part of his consideration from the State." *State v. Davis*, 2021 WI App 1, ¶ 9, 395 Wis. 2d 294, 953 N.W.2d 114. However, Davis's trial counsel could not ask Moore about the details of his pending charges, nor about the specific maximum penalties he was facing on those charges. *Id.*

Moore went on to testify that he "had two pending felony cases in Milwaukee County for which he was 'facing significant prison time.'" *State v. Davis*, 2021 WI App 1, ¶ 11, 395 Wis. 2d 294, 953 N.W.2d 114. He explained that he and Davis were once cellmates and that Davis had told him about a robbery he had committed in Wauwatosa in August 2015. *Id.*, ¶ 12. He said that Davis had told him he was armed with a gun when he "kicked the door in during the early morning hours" and stole a watch, two iPhones, two laptops, and some cash. *Id.* He also said that Davis had told him that he had unlocked one of the iPhones, took a photo using that phone, and then also using that phone sent the photo to someone else. *Id.*, ¶ 13. And he said that Davis had told

him that he had spent the cash but had "placed the other property in a book bag that he kept at his brother's place, but that he later moved some of the property to his aunt's house and 'to his grandmother's house.'" *Id.*

The State also introduced the consideration letter that it had given Moore, "which explained that the State would not give [him] any specific consideration in his pending cases but would inform the sentencing court of his testimony in Davis's case" and required that he "provide truthful testimony." *State v. Davis*, 2021 WI App 1, ¶ 11, 395 Wis. 2d 294, 953 N.W.2d 114.

On cross-examination, Davis's counsel questioned Moore about his motivations for testifying. *State v. Davis*, 2021 WI App 1, ¶ 14, 395 Wis. 2d 294, 953 N.W.2d 114. Among other things, Moore admitted that he "is a drug addict," has at times been "dishonest," that he "told police he had information on Davis that he would share for a better sentence," that he "was not yet sentenced on the two felonies," and that he "knows he was going to prison, but he wanted treatment instead. So, he was 'offering' to share his information 'wherever he needed to tell it to get his break,'" and that "he doesn't like prison, he has been there before, and he would do '[s]ome things' to avoid it." *Id.*, ¶ 34.

The State called several other witnesses, including B.B., Lee, several police officers, and Kristina Shemitis, a former supervising officer at the Milwaukee Secure Detention Facility. *State v. Davis*, 2021 WI App 1, ¶¶ 10, 18, 395 Wis. 2d 294, 953 N.W.2d

114. Davis did not present any evidence. *Id.*, ¶ 19. Davis was found guilty "of one count of armed robbery, threat of force and one count of burglary, building or dwelling," and sentenced to "a total of fifteen years of initial confinement followed by eight years of extended supervision." *Id.*, ¶ 20.

Davis appealed, and the Wisconsin Court of Appeals affirmed his conviction. *State v. Davis*, 2021 WI App 1, 395 Wis. 2d 294, 953 N.W.2d 114. The Wisconsin Supreme Court denied Davis's petition for review. (ECF No. 12-7.) Proceeding pro se, Davis filed a petition for a writ of habeas corpus. (ECF No. 1.) He presents one ground for relief, arguing that he was denied his Sixth Amendment right to confrontation when the trial court limited his trial counsel's ability to cross-examine the State's key witness, Moore. (*Id.* at 6.) The briefing on that petition is complete and the matter is ready for resolution. All parties have consented to the full jurisdiction of this court. (ECF Nos. 4, 9.)

**2. Standard of Review**

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petition under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—i.e., one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (*quoting Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and

circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)).

**3. Analysis**

Davis argues that the state trial court's decision "to limit cross-examination of an essential key witness was 'contrary to' and involved an unreasonable application of [] clearly stablished federal law [] as determined by the Supreme Court of the United States." (ECF No. 13 at 5.) He argues that "the trial court applied the Sixth Amendment right to confrontation incorrectly," improperly limiting his ability to fully cross-examine Moore, "the State's key witness." (*Id.* at 15.) As a result, the jury was deprived "of its opportunity to fully gauge Moore's credibility" and Davis was deprived "of his right to a fair trial." (*Id.* at 26.) He also argues that the Wisconsin Court of Appeals erred when it affirmed the trial court because it "failed to apply the principle established in *Davis v. Alaska*, and *Van Arsdale*, when deciding whether [his] rights under the [C]onfrontation [C]lause were violated." (*Id.* at 19.)

The respondent maintains that the "Wisconsin Court of Appeals did not unreasonably apply controlling United States Supreme Court authority when it rejected Davis's Confrontation Clause claim." (ECF No. 18 at 12.) "Specifically, the court's opinion fell within the portion of *Van Arsdall* that acknowledges the ability of courts 'to impose reasonable limits on such cross-examination.' It did not contradict *Van Arsdall* or

*Davis*, nor was it 'so lacking in justification that there was an error … beyond any possibility for fairminded disagreement.'" (*Id.* at 17 (internal citations omitted).)

The Sixth Amendment guarantees defendants the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. The right to confrontation is secured through the opportunity to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986) (citing *Davis*, 415 U.S. at 316– 17). However, "it does not follow … that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Van Arsdall*, 475 U.S. at 679. Indeed, a trial judge can "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* Put another way, the Confrontation Clause does not guarantee an opportunity for cross-examination "that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

The state trial court permitted Davis to cross-examine Moore about "his agreement with the State in exchange for his testimony, that he had eight prior convictions, that he was awaiting sentencing on two felonies to which he pled guilty

and was facing significant prison time, and that [he] sought drug treatment as part of his consideration from the State for testifying." *State v. Davis*, 2021 WI App 1, ¶ 31, 395 Wis. 2d 294, 953 N.W.2d 114. However, the trial court did not allow Davis to cross-examine Moore about "the specific nature of the felony charges" against him. *Id.*, ¶ 33. Even still, Davis elicited "numerous admissions" from Moore, including that he has at times been "dishonest" and that he "told police he had information on Davis that he would share for a better sentence." *Id.*, ¶ 34.

The state court of appeals concluded that the trial court "allowed Davis to extensively cross-examine [Moore] about relevant facts." *State v. Davis*, 2021 WI App 1, ¶ 31, 395 Wis. 2d 294, 953 N.W.2d 114. Indeed, "Davis was able to elicit all the information that he sought, except the specific nature of the two felony charges against [Moore]." *Id.*, ¶ 33. But the court of appeals concluded that the "specific nature" of those two felony charges was irrelevant to Davis's case: his trial counsel had "explicitly disclaimed any argument that [Moore] was the actual perpetrator and, instead simply sought to elicit that [Moore] was facing a significant amount of incarceration for those charges." *Id.* "Thus, the nature of [Moore's] two felony charges was not relevant—his potential punishment was, and the trial court allowed trial counsel to elicit the fact that the two charges that [Moore] was facing were felonies and that he was facing significant prison time at sentencing on the two felonies." *Id.* Therefore, the court of appeals concluded "Davis was not denied his right to confrontation." *Id.*, ¶ 36.

As explained above, in 1986 the United States Supreme Court held that a trial judge can limit defense counsel's inquiry into the potential bias of a prosecution witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Indeed, the Supreme Court in that case concluded that a trial judge can impose such limitations in order to avoid "confusion of the issues" or "interrogation" that is "only marginally relevant." *See id.* The state court of appeals applied that precedent here. First it explained that "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose limits on cross-examination." *State v. Davis*, 2021 WI App 1, ¶ 30, 395 Wis. 2d 294, 953 N.W.2d 114. Then it explained that the trial court did not err in limiting Davis's trial counsel's inquiry into the specifics of Moore's pending felony cases because Davis's trial counsel had "explicitly disclaimed" any argument that Moore was the "actual perpetrator." *Id.*, ¶ 33. Therefore, "[t]he fact that [Moore's] pending charges were for robbery and theft was not relevant." *Id.*

This court cannot conclude that the court of appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law. The trial court's decision to limit Davis's trial counsel's inquiry into the specifics of Moore's pending felony cases was reasonable. Had Davis's trial counsel argued that it was actually Moore who had broken into B.B.'s home and robbed him, it may have been relevant for the jury to hear that Davis had been charged with robbery, but Davis's trial counsel did not

make that argument. *State v. Davis*, 2021 WI App 1, ¶ 33, 395 Wis. 2d 294, 953 N.W.2d 114.

Moreover, Moore *did* testify to his motivations for testifying in Davis's case, including explaining to the jury that he was "facing 'significant' prison time because of his prior experience." *State v. Davis*, 2021 WI App 1, ¶ 34, 395 Wis. 2d 294, 953 N.W.2d 114. Moore's cross-examination "spanned over nineteen pages of trial testimony." *Id.*, ¶ 35. As the court of appeals concluded, "[t]rial counsel's cross-examination was clearly more than adequate to allow the jury to evaluate [Moore's] credibility." *Id.*, ¶ 36. In all, the court of appeals' application of Supreme Court precedent was "minimally consistent with the facts and circumstances of the case." *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). Therefore, the court of appeals' decision was not contrary to nor did it involve an unreasonable application of clearly established federal law.

Because the court of appeals' decision was not contrary to, nor an unreasonable application of, clearly established federal law, Davis's petition is denied.

Having denied Davis's petition, the court must determine whether to grant Davis a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. "An unsuccessful habeas petitioner has no right to appeal the denial of his petition." *Limehouse v. Thurmer*, No. 09-C-0071, 2012 U.S. Dist. LEXIS 43420, at *27 (E.D. Wis. Mar. 29, 2012) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003)). The

11
Case 2:21-cv-00853-WED    Filed 03/30/22    Page 11 of 12    Document 20

court may issue a certificate of appealability, thus permitting the petitioner's appeal, only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Davis has not satisfied this standard, and accordingly the court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that Davis's petition for a writ of habeas corpus is denied and this action is dismissed with prejudice. The court denies Davis a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of March, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate